GOODRIDGE v YPSILANTI TOWNSHIP BOARD
COMMAND OFFICERS ASSOCIATION OF MICHIGAN v
CITY OF ALLEN PARK

Docket Nos. 102629, 103328. Decided May 21, 1996. On application by
    both parties in *Goodridge* and by the respondent in *Command
    Officers Ass'n* for leave to appeal, the Supreme Court, in lieu of
    granting leave, reversed the judgments of the Court of Appeals and
    remanded the cases to the Court of Appeals for further
    consideration.

    Jerry T. Goodridge, Ypsilanti Township fire chief, was terminated from
        his employment with the township following charges of malfea-
        sance involving knowledge of fraudulent civil service eligibility hir-
        ing lists for fire fighters and his failure to alert the township board.
        The Ypsilanti Township Civil Service Commission sustained the ter-
        mination. The Washtenaw Circuit Court, Ross W. Campbell, J.,
        affirmed. The Court of Appeals, TAYLOR, P.J., and W. G. SCHMA, J.
        (GRIFFIN, J., dissenting), set aside the discipline on the ground that
        the charges were void ab initio because they were not brought
        within ninety days of the alleged violations pursuant to the fire
        fighters' and police officers' service act, MCL 38.514; MSA 5.3364
        (Docket No. 137346). The board seeks leave to appeal, and Good-
        ridge seeks leave to appeal as cross-appellant.

    Kenneth Dobson, an Allen Park police officer, was charged with six
        incidents of misconduct with regard to a traffic accident. The Allen
        Park Fire and Police Civil Service Commission dismissed three of
        the charges, sustained three, and imposed punishment. The Wayne
        Circuit Court, Kathleen MacDonald, J., affirmed. The Court of
        Appeals, FITZGERALD, P.J., and E. R. POST, J. (MICHAEL J. KELLY, J., con-
        curring), set aside the discipline on the ground that the charges
        were untimely and therefore void. However, a majority said it
        would have upheld the commission's determination, but was bound
        by the first-out decision in *Goodridge* (Docket No. 165236). The
        Court later ordered that a special panel not be convened to review
        the rule of *Goodridge*. 210 Mich App 801 (1995). The city seeks
        leave to appeal.

        In a unanimous opinion per curiam, the Supreme Court *held*:

> The fire fighters' and police officers' service act should be interpreted to provide that charges against a member of any fire or police department are timely if filed within ninety days of the time the employer learned, or reasonably should have learned, of the alleged misconduct.
>
> In deciding whether to strictly enforce a period of limitation or apply a discovery rule, consideration must be given to whether the party who has the burden of initiating litigation was given a fair opportunity to bring the claim and whether the responding party's equitable interests would be unfairly prejudiced by tolling the statute of limitations. Where the limitation period is short, there is an increased possibility that the time for taking action may come and go before the employer has an opportunity to take action. This is particularly likely in situations where, as alleged in these cases, a public employee engaged in dishonest conduct.
>
> Reversed and remanded.
>
> 209 Mich App 344; 529 NW2d 665 (1995) reversed.
>
> 210 Mich App 485; 534 NW2d 258 (1995) reversed.

*William G. Povlitz* for Goodridge.

*Stephen P. Whitaker* for Command Officers Association of Michigan.

*McLain & Winters* (by *Wm. Douglas Winters* and *Angela B. King*) for Ypsilanti Township Board.

*Pagnucco, Kruse, Tamsen & Labadie, P.C.* (by *Kenneth D. Kruse*), for the City of Allen Park, and *Judith Sawicki* for Allen Park Civil Service Commission.

PER CURIAM. The petitioners include a fire chief and a police officer who were disciplined by local civil service commissions. In each case, the Court of Appeals has set aside the discipline on the ground that the charges were not filed within the statutory ninety-day period. We reverse the judgments of the Court of Appeals and remand these cases to the Court of Appeals for further consideration.

I

In early 1986, Jerry T. Goodridge was Ypsilanti Township fire chief. In April of that year, an incident occurred that led to his discharge. The facts have been summarized by the Court of Appeals. *Goodridge v Ypsilanti Twp Bd*, 209 Mich App 344, 345-346; 529 NW2d 665 (1995).

> This case stems from events that took place in April 1986 and resulted in the creation of two fraudulent civil service eligibility hiring lists for fire fighters; one list was dated April 7, 1986, and the other was dated April 21, 1986. The purpose of the lists was to rank applicants according to their written and oral exam results. However, both lists contained names of individuals who either had never taken the written and oral examinations or had failed those examinations. The April 7 list was used to hire four fire fighters on April 25, 1986. In July 1986, when the fraud was discovered, those four fire fighters were terminated.
>
> A letter dated October 16, 1986, signed by Township Supervisor Ron Allen and six members of the township board, charged petitioner with five separate incidents of malfeasance in connection with his knowledge of the fraudulent lists and his failure to alert the township board. The letter indicated that his employment was terminated and that pursuant to the firemen's and policemen's service act (FPSA), MCL 38.514; MSA 5.3364, the matter was being referred to the YTCSC [Ypsilanti Township Civil Service Commission].
>
> The YTCSC conducted hearings regarding the five charges against petitioner, and on December 8, 1987, issued a decision sustaining the termination of his employment. He filed a timely petition for review in the Washtenaw Circuit Court and the court affirmed the YTCSC's decision, concluding that the decision was supported by the record.

The Court of Appeals set aside the discipline on the ground that the charges against Mr. Goodridge were

void ab initio because they were not brought within ninety days of the alleged violations. The Court relied on this sentence from MCL 38.514; MSA 5.3364:[1]

> No member of any fire or police department within the terms of this act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished except for cause, and in no event until he shall have been furnished with a written statement of the charges and the reasons for such actions, and all charges shall be void unless filed within 90 days of the date of the violation, except in the case of a probationer, whose violations may accumulate for the probationary period.

The Court of Appeals acknowledged three prior decisions in which the ninety-day period was found to run from the date when misconduct is discovered,[2] but a majority of the panel said that such an approach "is unsustainable because it is contrary to the statute's plain terms."[3] 209 Mich App 347. Giving

---

[1] The quoted language is from MCL 38.514; MSA 5.3364, as amended by 1949 PA 271. The statutory provision was amended by 1986 PA 155, and now includes this sentence:

However, a member of any fire or police department encompassed by this act shall not be removed, discharged, reduced in rank or pay, suspended, or otherwise punished except for cause, and in no event until he or she has been furnished with a written statement of the charges and the reasons for the actions. In addition, all charges shall be void unless filed within 90 days after the date the violation occurred, except in the case of a probationer, whose violations may accumulate for the probationary period.

[2] *Solomon v Highland Park Civil Service Comm*, 47 Mich App 536, 540-541; 209 NW2d 698 (1973), lv den 390 Mich 790 (1973); *Hunn v Madison Heights*, 60 Mich App 326, 332-333; 230 NW2d 414 (1975); *Werner v Macomb Co Civil Service Comm*, 77 Mich App 533, 538; 258 NW2d 549 (1977), lv den 402 Mich 836 (1977). *Werner* involved similar language in a parallel statute.

[3] The Court indicated that the rule stated in *Solomon, Hunn,* and *Werner,* n 2 *supra,* was, in its lack of legal support, akin to the theories propounded in the apocryphal "highwayman's case" described in *Manning v*

"limited retroactivity" to its holding, 209 Mich App 353-354, the majority concluded that Mr. Goodridge "is entitled to reinstatement, if otherwise qualified, as of the date of this opinion, but not to back pay." 209 Mich App 354.

In dissent, Judge GRIFFIN said that the "decision overturning *Werner*, *Hunn*, and *Solomon* and establishing a new rule of law is imprudent and extraordinary." 209 Mich App 354. He criticized the majority for deciding the case on the basis of an issue not raised by the parties,[4] and said that "other potentially important considerations such as detrimental reliance, stare decisis, and legislative acquiescence" had not been addressed. 209 Mich App 355.

The Ypsilanti Township Board has applied to this Court for leave to appeal, and Mr. Goodridge has filed for leave to appeal as cross-appellant.

II

Kenneth Dobson is an Allen Park police officer. In May 1992, he and another officer were involved in an incident that led to disciplinary charges being filed against him. Again, the Court of Appeals has stated the facts. *Command Officers Ass'n of Michigan v City of Allen Park*, 210 Mich App 485, 486-488; 534 NW2d 258 (1995).

---

*Bishop of Marquette*, 345 Mich 130, 133-134; 76 NW2d 75 (1956). 209 Mich App 351-352. (It is said that in the highwayman's case—a suit between thieves, concerning how to split the plunder—the complaint was dismissed "for impertinence," the lawyer was fined, and both parties were executed.)

[4] The majority's response was that the issue *had* been raised, albeit with an argument that had a slightly different focus. 209 Mich App 351.

On May 18, 1992, the vehicle in which Allen Park police officer Corporal Richard Curtis and Dobson, his passenger, were traveling collided with the rear of a vehicle owned by Laura Crupi and driven by Chad Hall. Curtis and Dobson had been golfing all day and admittedly consumed alcoholic beverages before the accident. According to witnesses, Curtis admitted fault, but indicated that he did not want to report the accident because his insurance rates were too high. Another witness indicated that Hall, who had a suspended license, did not want to be reported as the driver. Although Dobson denied knowing that Hall was the driver, Hall, along with other witnesses, indicated that Dobson knew that Hall was the driver.

Allen Park police officer Kenneth Zalenski responded to the scene of the accident. Zalenski heard Dobson tell Crupi and Hall that they could make out an accident report with Zalenski, or wait and have Dobson take care of it the following Thursday. Dobson then told Zalenski to "clear the scene."

Crupi went to the police station three days later and Dobson prepared a police report. Crupi was listed as the driver of her vehicle and Dobson was not listed as a passenger in Curtis' vehicle.

The Allen Park Police Department subsequently received anonymous telephone calls informing them that the police report had been falsified and that the police officers had been drinking on the day of the accident.

Six charges were brought against Dobson as a result of the traffic accident. The charges alleged that Dobson:

"(1) Knowingly entered false information on a police report regarding the accident of May 18, 1992, in which you were involved;

"(2) Failed to obtain all facts and pertinent information available regarding the accident of May 18, 1992, as reported in complaint #A-404-92;

"(3) [Was] dishonest in your statement to the officer investigating said accident and complaint;

"(4) Failed to allow the responding on-duty officer to fully and properly investigate the accident of May 18, 1992 as reported in complaint #A-404-92;

"(5) Submitted a document to department records for filing that you knew contained false information;

"(6) Instigated and committed actions that tend to or does discredit and injure the morale and reputation of the department."

As a result of these charges, the charging officer recommended that Dobson be discharged.

A hearing was held before the City of Allen Park Fire & Police Civil Service Commission on September 10, 1992. Charges 3, 4, and 6 were dismissed for lack of evidence. The remaining three charges were sustained. The punishment imposed by the commission was a fifteen-day suspension without pay, the loss of five vacation days, and ineligibility for promotion for six months. Petitioners[5] appealed the commission's findings and order of discipline to the Wayne Circuit Court, which affirmed the commission's determination.

As in *Goodridge*, the Court of Appeals set aside the discipline on the ground that the charges were untimely and therefore "void." However, a majority of the panel said that it would have *upheld* the commission's determination, except that it was bound by the "first-out" decision in *Goodridge*.[6] 210 Mich App 489.

The majority criticized *Goodridge*, citing *Werner* and *Wines v Huntington Woods*, 97 Mich App 86, 91; 293 NW2d 730 (1980), as instances in which the Court of Appeals had "interpreted the limitation provisions in other statutes regulating public employment and has inferred the existence of tolling periods even though the involved statute did not provide explicitly therefor." 210 Mich App 488-489, n 1.

---

[5] The petitioners are Inspector Dobson and the labor organization that represents him in collective bargaining.

[6] Issued in 1995, *Goodridge* and *Command Officers* were subject to Administrative Order No. 1994-4, 445 Mich xci.

Judge MICHAEL J. KELLY concurred separately, offering the opinion that *Goodridge* had been correctly decided. 210 Mich App 490.

The Court of Appeals later entered an order directing that a special panel not be convened to review the rule of *Goodridge*. 210 Mich App 801; 534 NW2d 258 (1995).

The City of Allen Park has applied to this Court for leave to appeal.

III

Although some statutory limitation provisions include a discovery rule,[7] most do not. Thus, it often remains for the courts to determine whether a statutory limitation period should be tolled to allow a potential litigant a reasonable opportunity to file a claim.[8]

The question whether to add a "discovery rule" to a limitation period that does not contain such an express provision has arisen in several cases in recent years.[9] We recently addressed the subject in *Stephens v Dixon*, 449 Mich 531; 536 NW2d 755

---

[7] E.g., MCL 600.5838(2), 600.5838a(3); MSA 27A.5838(2), 27A.5838(1)(3).

[8] We have frequently observed that statutory interpretation is primarily an exercise in locating the intent of the Legislature. *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995); *Popma v ACIA*, 446 Mich 460, 469, n 8; 521 NW2d 831 (1994). While an examination of statutory language is certainly a crucial element in that inquiry, *Grand Traverse Co v State of Michigan*, 450 Mich 457, 464; 538 NW2d 1 (1995); *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995), a dogged literalism should not be employed to defeat the Legislature's intent. *Williams v Secretary of State*, 338 Mich 202, 208; 60 NW2d 910 (1953).

[9] See also *Chase v Sabin*, 445 Mich 190; 516 NW2d 60 (1994), *Moll v Abbott Laboratories*, 444 Mich 1; 506 NW2d 816 (1993), *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986), *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974), and *Johnson v Caldwell*, 371 Mich 368; 123 NW2d 785 (1963).

(1995). There, we noted that statutes of limitation "are procedural devices intended to promote judicial economy and the rights of defendants." 449 Mich 534. Such statutory provisions "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." 449 Mich 534.

In *Stephens*, we then discussed the policy considerations relating to the imposition of a discovery rule. 449 Mich 535-536. We summarized the competing policies by explaining that, "in deciding whether to strictly enforce a period of limitation or impose the discovery rule, we must carefully balance when the plaintiff learned of her injuries, whether she was given a fair opportunity to bring her suit, and whether defendant's equitable interests would be unfairly prejudiced by tolling the statute of limitations." 449 Mich 536.

IV

The Court of Appeals has decided these cases on the ground that the plain language of MCL 38.514; MSA 5.3364 does not include a discovery rule. Such an examination of the language is an important element of the analysis, but it is not a controlling consideration, as evidenced by the application of discovery rules in other contexts.

As we stated in *Stephens*, in deciding whether to strictly enforce a period of limitation or apply a discovery rule, we must consider whether the party who has the burden of initiating litigation "was given a fair opportunity to bring [the claim]" and whether the responding party's "equitable interests would be unfairly prejudiced by tolling the statute of limita-

tions." 449 Mich 536. These analyses are necessary to assure that the purposes of the legislation are being effected.

In considering such questions, we are aware that many statutory limitation periods are years in length. The present statute allows only a ninety-day window in which to bring charges. Obviously, the shorter period serves important public purposes, such as maintaining an unclouded working relationship between employer and employee—if an employee has engaged in misconduct, the employer must act promptly or forgo its opportunity to pursue the matter.

However, where the limitation period is so short, there is an increased possibility that the time for taking action may come and go before the employer (and the citizens in whose behalf the employer acts) has an opportunity to take action. This is particularly likely in situations where, as alleged in these cases, a public employee engaged in dishonest conduct, falsifying records to create a misleading paper trail.[10]

In light of the brief statutory limitation period and the need to balance the rights of the employee and the rights of the public, we are persuaded that the statute should be interpreted in the manner in which it was understood to operate before the Court of Appeals decisions in these cases.[11] Thus, charges are timely if filed within ninety days of the time the

---

[10] Cf. MCL 600.5855; MSA 27A.5855. In *Goodridge*, the Court of Appeals characterized government as "the invariably knowledgeable party." 209 Mich App 350. Yet, plainly there are occasions in which misconduct can be hidden from a government employer.

[11] We agree with the Court of Appeals in *Command Officers* that the 1986 amendment noted in footnote 1 did not effect a substantive change in the limitation period. 210 Mich App 488.

employer learned, or reasonably should have learned, of the alleged misconduct.

For these reasons, we reverse the judgments of the Court of Appeals, and we remand these cases to the Court of Appeals for further consideration in light of this opinion. MCR 7.302(F)(1).

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.