SEATON v WAYNE COUNTY PROSECUTOR (ON SECOND REMAND)

Docket No. 191685. Submitted October 9, 1998, at Lansing. Decided
    December 29, 1998, at 9:50 A.M. Leave to appeal denied, 459 Mich
    ——.

Parnell Seaton, a state prison inmate, brought an action in the Wayne
    Circuit Court seeking under the Freedom of Information Act (FOIA),
    MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, to compel the Wayne
    County Prosecutor to comply with FOIA requests the plaintiff made
    between 1989 and 1993 for documents relating to his prosecution
    and conviction. While the action was pending, the Legislature
    enacted 1994 PA 131 to prohibit inmates from making FOIA requests.
    The court, Sharon Tevis Finch, J., granted summary disposition for
    the prosecutor, determining that 1994 PA 131 applies to the plain-
    tiff. The Court of Appeals denied the plaintiff's application for leave
    to appeal. The Supreme Court, in lieu of granting leave, remanded
    the case to the Court of Appeals for consideration as on leave
    granted. 450 Mich 969 (1996). The Court of Appeals, GRIFFIN and
    SAAD, JJ. (TAYLOR, P.J., dissenting), affirmed the decision of the cir-
    cuit court, holding that MCR 6.101(L), now MCR 6.433(A), governs
    exclusively when a person seeks records related to the person's
    criminal conviction such that the FOIA cannot apply. 225 Mich App 1
    (1997). On appeal to the Supreme Court, the Supreme Court
    remanded the case to the Court of Appeals to consider, and decide,
    in an amplified opinion, the question of the retroactivity of 1994 PA
    131. 459 Mich 876 (1998).

    On second remand, the Court of Appeals *held*:

    Statutes related to remedies or modes of procedure that do not
    create new or take away vested rights, but only operate in further-
    ance of a remedy or confirmation of rights already existing will, in
    the absence of language clearly showing a contrary intention, be
    held to operate retrospectively and apply to all actions accrued,
    pending, or future, there being no vested right to keep a statutory
    procedural law unchanged and free from amendment. A statute will
    be regarded as remedial if it is designed to correct an existing law
    or if it applies to procedural matters rather than to substantive
    rights. 1994 PA 131 is one such remedial statute that applies retro-
    actively to the plaintiff's FOIA action.

Affirmed.

1. STATUTES — REMEDIAL STATUTES — RETROACTIVE APPLICATION.

A new or amended statute generally applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect; an exception to this general rule is recognized where a statute is remedial or procedural in nature.

2. STATUTES — REMEDIAL OR PROCEDURAL STATUTES — RETROACTIVE APPLICATION.

Statutes related to remedies or modes of procedure that do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending, or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment.

3. RECORDS — FREEDOM OF INFORMATION ACT — INCARCERATED PERSONS.

The statute that amended the Freedom of Information Act to exclude those incarcerated in correctional facilities from those who may bring an action under the act for disclosure of documents is remedial in nature and therefore has retroactive application to actions that were pending on the statute's effective date of May 19, 1994 (MCL 15.231 *et seq.*; MSA 4.1801[1] *et seq.*, as amended by 1994 PA 131).

Parnell Seaton, in propria persona.

*John D. O'Hair,* Prosecuting Attorney, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the defendant.

ON SECOND REMAND

Before: TAYLOR, P.J., and GRIFFIN and SAAD, JJ.

GRIFFIN, J. On second remand from the Supreme Court, this case is before us for the issuance of an amplified opinion on the question whether 1994 PA 131 is retroactive. We hold that the statute is remedial in nature and therefore retroactive.

I

Plaintiff, a prisoner proceeding in propria persona, appeals an order of the Wayne Circuit Court dismissing his 1993 complaint brought under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* On March 1, 1995, this Court denied plaintiff's application for leave to appeal for lack of merit in the grounds presented. Thereafter, in response to plaintiff's delayed application for leave to appeal, the Supreme Court remanded to this Court for consideration as on leave granted. *Seaton v Wayne Co Prosecutor*, 450 Mich 969 (1996).

In our previous opinion, *Seaton v Wayne Co Prosecutor (On Remand)*, 225 Mich App 1; 570 NW2d 125 (1997), remanded 459 Mich 876 (1998), the majority[1] of this Court affirmed the grant of summary disposition in favor of defendant on the basis that the FOIA does not apply to a prisoner's request for records of his own criminal trial. *Jones v Wayne Co Prosecutor*, 165 Mich App 62; 418 NW2d 667 (1987). On second remand, we reaffirm our previous decision and accordingly again affirm the order of the circuit court granting summary disposition in favor of defendant. Nonetheless, pursuant to the directive from the Supreme Court, we now address an issue that we previously considered unnecessary for our disposition.

II

Effective May 19, 1994, the Legislature amended the FOIA to specifically exclude incarcerated prisoners from the class of persons entitled to obtain public

---

[1] Judge (now Justice) TAYLOR wrote a separate opinion in which he disagreed with the majority's rationale, but expressed no opinion regarding the result.

records. Subsection 1(2) of the FOIA, MCL 15.231(2); MSA 4.1801(1)(2), now provides:

> It is the public policy of this state that all persons, *except those persons incarcerated in state or local correctional facilities*, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [Emphasis added.]

Further, at the time applicable in this case subsection 2(a), MCL 15.232(a); MSA 4.1801(2)(a), exempted prisoners from the class of persons entitled to invoke the FOIA:

> "Person" means an individual, corporation, partnership, firm, organization, or association, *except that person does not include an individual serving a sentence of imprisonment* in a state or county correctional facility in this state or any other state, or in a federal correctional facility.[2] [Emphasis added.]

Under Michigan law, the general rule of statutory construction is that a new or amended statute applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect. *People v Russo*, 439 Mich 584, 594; 487

---

[2] This subsection has been subsequently revised by 1996 PA 553 and now reads as follows:

"Person" means an individual, corporation, limited liability company, partnership, firm, organization, association, governmental entity, or other legal entity. Person does not include an individual serving a sentence of imprisonment in a state or county correctional facility in this state or any other state, or in a federal correctional facility. [MCL 15.232(c); MSA 4.1801(2)(c).]

NW2d 698 (1992). However, an exception to the general rule is recognized where a statute is remedial or procedural in nature. *Id.* In *In re Certified Questions,* 416 Mich 558, 570-571; 331 NW2d 456 (1982), the Supreme Court established rules for determining whether a statute is to be retroactively applied:

> First, is there specific language in the new act which states that it should be given retrospective or prospective application. See headnote no. 1, *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). Second, "[a] statute is not regarded as operating retrospectively [solely] because it relates to an antecedent event." *Hughes v Judges' Retirement Board,* 407 Mich 75, 86; 282 NW2d 160 (1979). Third, "[a] retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Hughes, supra,* p 85; *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 533-534; 164 NW2d 19 (1969). Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute. *Rookledge v Garwood,* 340 Mich 444; 65 NW2d 785 (1954).

See also *Flynn v Flint Coatings, Inc,* 230 Mich App 633, 636; 584 NW2d 627 (1998).

In the present case, 1994 PA 131 is silent regarding whether its amendments of the FOIA are to be retrospectively or prospectively applied. Rule one is therefore not relevant to the present circumstances. In addition, rule two is not applicable because the statute does not relate to an antecedent event. Accordingly, the present question is determined by either rule three or rule four. The third rule "define[s] those retrospective situations that are not legally accept-

able, whereas the fourth rule defines those that are acceptable." *In re Certified Questions, supra* at 572. In other words, "rule four establishes the corollary to the general proscription found in rule three." *Id.* at 575. As explained by the *Certified Questions* Court:

> The third rule states that retrospective application of a law is improper where the law "takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Hughes, supra,* p 85. The fourth rule was stated in *Hansen-Snyder, supra* (headnote no. 1):
>
> "1. STATUTES—REMEDIES—RETROSPECTIVE OPERATION—AMEND-MENT. Statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment." [*Id.* at 572.]

After reviewing *In re Certified Questions* and the cases discussed therein as examples of rules three and four, *id.* at 572-576, we hold that the present statute falls within the category of rule four cases and that therefore the fourth, not the third, rule of retroactivity applies. Reaching this conclusion, we have again looked to *In re Certified Questions* for guidance:

> E. *Rule Four Cases*
>
> The case law development of rule four establishes the corollary to the general proscription found in rule three. A remedial or procedural statute may operate retrospectively if it does not "take away vested rights." *Ballog v Knight*

*Newspapers, Inc, supra,* pp 533-534, quoting from headnote no. 1 of *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480 (1963).

Moreover, in *Guardian Depositors Corp v Brown,* 290 Mich 433, 439-440; 287 NW 798 (1939), this Court, in a "contract case," stated that the Legislature may modify, limit, and even alter the *remedy* for enforcement of a contract without violating the rule against retrospectivity. Thus, such a new act would fall into rule four because it does not completely deny a remedy with such restrictions that it impairs the value of the contract or the substantive right.

Although *Rookledge, supra,* was considered in our discussion of rule three, its holding supports our analysis of rule four. While the *Rookledge* Court found that the defendant third-party tortfeasor did not have a vested right in a statutory defense which barred the plaintiff from suit once he elected workers' compensation benefits, that Court implicitly recognized, consistent with rule four, that the fact that the new statute changes the legal consequences of a prior act does not prevent a retrospective application of that statute, since that statute is remedial in nature.

In *Hansen-Snyder, supra,* this Court held that a plaintiff could take advantage of a statutory amendment which extended the period for serving notice of intent to claim a lien from 60 days to 90 days from the date of first furnishing labor and material. The plaintiff, who had begun work under the prior statute, had failed to file within the old act's 60-day prescription. Nevertheless, the new act was viewed as a procedural amendment which was applicable to the plaintiff's claim.

Once again, in *Ballog, supra,* this Court, in a case procedurally similar to the instant case, applied a new act retrospectively. The Court in *Ballog* had to determine whether a statute in effect at the time of the plaintiff's injury which granted interest "from the date of judgment" or a new act which granted interest "from the date of filing the complaint" was applicable. The plaintiff's personal injury cause of action accrued before the new act became effective, and he also filed suit before its enactment. Nevertheless, we indicated that the new act fell within the remedial or proce-

dural classification which *did not take away a vested right*, and, thus, we gave the new act retrospective effect. 381 Mich 533-536. [*Id.* at 575-576 (emphasis in original).]

Further, we have explored in detail the concept of "remedial" statutes. In *Rookledge, supra* at 453, our Supreme Court expounded on this principle:

It is generally understood that if a statute or amendment is "designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good," it will be regarded as remedial in nature. . . . The same connotation is given to those statutes or amendments which apply to procedural matters rather than to substantive rights. The definitive rule in this respect, found in 50 Am Jur, pp 33, 34, Statutes, § 15, is:

*"Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof* implying an intention to reform or extend existing rights, and having for their purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society, or of the public generally. Another common use of the term 'remedial statute' is to distinguish it from a statute conferring a substantive right, and to apply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or redress an injury. It applies to a statute giving a party a remedy where he had none or a different one before." [Emphasis added.]

A

1994 PA 131 bears the hallmarks of a "remedial" statute in both senses of the definition mentioned in *Rookledge.* First, the statute was intended to cure "mischiefs" inadvertently created by the original statute. In determining whether to retroactively apply a

statute, it is always appropriate to consider " 'the object of the statute, the harm it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose.' " *Russo, supra* at 595 (citation omitted). Although not an official statement of legislative intent,[3] the Senate Fiscal Agency Bill Analysis of Senate Bill 639,[4] December 15, 1993, is enlightening:

> *rationale*
>
> The Freedom of Information Act (FOIA) was signed into law in 1976 to provide for public access to most records of public bodies. The Department of Corrections (DOC) apparently handles a greater volume of FOIA disclosure requests than does any other public agency. Most of these request [sic] are made by prisoners under the DOC's jurisdiction. Reportedly, in 1992 offender requests processed by the DOC totaled more than 1.5 million copies, at a billed amount of $216,602.93; payments made totaled only $11,295.81, however. The DOC reportedly has estimated that the equivalent of 20 employees are involved in answering these FOIA requests, at a labor cost of more than $900,000. Since the FOIA requires a public body to satisfy requests quickly and without inquiring as to the reason for the request, the Department *must* provide requested information (unless that information is statutorily exempted from disclosure) or face legal action on the part of the requesting party. Some people contend that, by requesting records that are irrele-

---

[3] We recognize that legislative bill analyses are not official statements of legislative intent. Nevertheless, bill analyses may be of probative value. See, e.g., *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 406, n 12; 578 NW2d 267 (1998); *Nemeth v Abonmarche Development, Inc*, 457 Mich 16, 27-29; 576 NW2d 641 (1998); *People v Grant*, 455 Mich 221, 239-241; 565 NW2d 389 (1997); *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 164-166; 551 NW2d 132 (1996) (opinion by BOYLE, J.). See also *People v Hall*, 391 Mich 175, 191; 215 NW2d 166 (1974). Cf. *Hagerman v Gencorp Automotive*, 457 Mich 720, 761, n 14; 579 NW2d 347 (1998) (dissenting opinion by TAYLOR, J.).

[4] Senate Bill 639 ultimately became 1994 PA 131.

vant to their particular cases, prisoners routinely abuse their rights under the FOIA for the purpose of harassing the DOC and its employees. They believe that prisoners should be statutorily excluded from rights to disclosure of public information under the FOIA.

*content*

The bill would amend the Freedom of Information Act to exclude from the definition of "person," for purposes of the FOIA, an individual serving a sentence of imprisonment in a State or county correctional facility in Michigan or any other state, or in a Federal correctional facility. The bill also would exclude persons incarcerated in State or local correctional facilities from the Act's statement that it is Michigan's public policy that "all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees."

The quoted bill analysis confirms that 1994 PA 131 falls within that class of statutes that amend existing legislation for the purpose of correcting a perceived flaw or defect. *In re Certified Questions, supra; Rookledge, supra.* The statute at issue was clearly enacted to put a halt to the mischief and abuse of public resources caused by Michigan's prisoner population through excessive and largely frivolous FOIA requests. In *Romein v General Motors Corp*, 436 Mich 515, 538; 462 NW2d 555 (1990), the Court, albeit in the context of a separation of powers claim, cited with approval *Long v United States Internal Revenue Service*, 742 F2d 1173 (CA 9, 1984), subsequent proceedings vacated on other grounds 487 US 1201; 108 S Ct 2839; 101 L Ed 2d 878 (1988), in which

the court upheld a statute that abolished the plaintiff's right to obtain disclosure of certain IRS data, although such disclosure rights had been created by a previous federal appellate decision interpreting a statutory exemption to the Free-

dom of Information Act. In upholding the Congressional repeal of this exemption against due process challenge, the Court articulated a principle that is useful in resolving the separation of power claim presented here:

"Courts have consistently upheld the retroactive application of 'curative' legislation which corrects defects subsequently discovered in a statute and which restores what Congress had always believed the law to be. [*Id.* at 1183.]"

See also *People v Link,* 225 Mich App 211, 214-218; 570 NW2d 297 (1997); *Preston v Dep't of Treasury,* 190 Mich App 491, 495-496; 476 NW2d 455 (1991).

B

1994 PA 131 is also "remedial" in the second sense suggested in *Rookledge.* Contrary to the customary FOIA request, an application by a prisoner for the records of his own criminal trial is procedural in nature for the reason that irrespective of the FOIA, the prisoner has a substantive constitutional right to obtain such records. As this Court stated in *Jones, supra* at 65:

While the MFOIA would also appear to be applicable to the present case, we conclude that MCR 6.101(L) [now MCR 6.433] governs exclusively when, as in the present case, a person seeks records related to his or her criminal conviction.

The method of obtaining documents related to a person's criminal conviction is a matter of procedure rather than substantive law. After all, the issue is not plaintiff's substantive right to the documents, but rather merely from whom he must request the documents. Procedural issues in the state courts are governed by court rule, not by statute. *Buscaino v Rhodes,* 385 Mich 474; 189 NW2d 202 (1971); *In re Nathan,* 99 Mich App 492; 297 NW2d 646 (1980).

In holding that plaintiff's FOIA request is procedural in nature, we follow the reasoning of the *Certified Questions* Court, *supra* at 576-577, regarding the retroactive application of the products liability statute:

In comparing the instant case to rule three and rule four cases discussed, it is immediately apparent that the federal trial judge did not err under Michigan law in applying the products liability statute in the case at bar where plaintiff's claim accrued and was sued upon prior to the time the new statute became effective. On the one hand, it is conceded that plaintiff's right became "vested" when his cause of action accrued. But, on the other hand, two things are clear. First, § 2949 is part of a remedial statute which may be applied retrospectively. Second, the relevant case law indicates to us, when we compare it to the case at bar, that plaintiff's right was not taken away in the technical meaning of the case law proscription.

III

In summary, because 1994 PA 131 is clearly "remedial" under either definition of the term, we hold that it is retroactive. Accordingly, plaintiff is not within the class of persons entitled to invoke the FOIA. Plaintiff's rights and remedies are governed by the Michigan and federal constitutions and MCR 6.433.

Affirmed.

TAYLOR, P.J., did not participate.